Jonathan L. Flaxer, Esq.
Elizabeth C. Conway, Esq.
Michael S. Weinstein, Esq.
Golenbock Eiseman Assor Bell & Peskoe LLP
711 Third Avenue
New York, New York 10017
(212) 907-7300

*Counsel for Joint Liquidators*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                             :
In re                                                        :    Chapter 15
                                                             :
LEGION N.A. INVESTMENTS LTD.,                                :    Case No. 20-_____
                                                             :
        Debtor in Foreign Proceeding.                        :
                                                             :
-------------------------------------------------------------X

## VERIFIED PETITION UNDER CHAPTER 15 OF THE BANKRUPTCY CODE FOR RECOGNITION OF A FOREIGN MAIN PROCEEDING

Carl Jackson, Simon Bonney and Amy Slee solely in their capacity as Joint Liquidators (the "**Joint Liquidators**[1]" or "**Petitioners**") of Legion N.A. Investments Ltd. ("**Legion**" or the "**Debtor**") in a foreign proceeding in the Isle of Man for voluntary liquidation (the "**Isle of Man Proceeding**") pursuant to The Companies Act 1931-2004 (the "**Act**") and the Companies (Winding Up) Rules 1934 (the "**Rules**"), and through their undersigned counsel, respectfully submit this Verified Petition, verified by the Declarations of Carl Jackson, Simon Bonney and Amy Slee, filed herewith, seeking recognition of the Isle of Man Proceeding as a foreign main proceeding pursuant to chapter 15 of title 11 of the United States Code (the "**Bankruptcy Code**"), or alternatively, a foreign nonmain proceeding, and themselves as authorized foreign representatives of the Debtor, and granting such further relief as may be appropriate.

---
[1] Capitalized terms used but not defined shall have the meanings ascribed to such terms in the Background Fact section.

3470136.8

Attached hereto as exhibits are (i) the Proposed Order Granting Recognition, Exhibit A; (ii) the Proposed Order Scheduling a Hearing on, and Specifying the Form and Manner of Service for, the Chapter 15 Petition, Exhibit B; and (iii) the Proposed Notice of Hearing for the Recognition of Foreign Main Proceeding, Exhibit C.  In support thereof, the Joint Liquidators respectfully state as follows:

## PRELIMINARY STATEMENT

1. The Joint Liquidators are charged with winding down the Debtor in the Isle of Man.  The Debtor was a company organized under the laws of the Isle of Man.  In furtherance of their duties, the Joint Liquidators are investigating certain assets of the Debtor in the United States and certain actions taken in the United States with respect to those assets.  In order to investigate the assets properly, the Joint Liquidators seek recognition of the Debtor's foreign proceeding as a "foreign main proceeding" to ascertain the value of these assets and, if appropriate, assert claims against any responsible individuals or entities.  In the event the Court determines that the Isle of Man Proceeding is not a foreign main proceeding, in the alternative, the Joint Liquidators request the court recognize the Isle of Man Proceeding as a foreign nonmain proceeding.

2. As set forth below, the Liquidation Resolution and other documents filed contemporaneously herewith in support of the Petition show that (i) the Debtor was organized and operated in the Isle of Man and the Isle of Man Proceeding is a "foreign main proceeding" within the meaning of section 1502(4) of the Bankruptcy Code; and (ii) Petitioners are the "foreign representatives," within the meaning of section 101(24) of the Bankruptcy Code, authorized among other things, to administer the liquidation of the Debtor's assets, and to act as representatives of the Isle of Man Proceeding.

3470136.8

3. In connection with marshaling the Debtor's assets and administering the Isle of Man Proceeding, the Joint Liquidators seek to investigate the status of the Debtor's assets in the United States and pursue recovery thereof. Petitioners request that the Court (i) recognize the Isle of Man Proceeding as a foreign main proceeding, or, in the alternative, as a foreign nonmain proceeding; (ii) recognize the Joint Liquidators as the "foreign representatives" of the Debtor within the meaning of section 101(24) of the Bankruptcy Code; and (iii) grant discovery relief to assist the Joint Liquidators in connection with administration of the Isle of Man Proceeding.

## JURISDICTION AND VENUE

4. This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the "Amended Standing Order of Reference" of the United States District Court for the Southern District of New York (C.J. Preska), dated January 31, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

5. The Debtor's assets in the United States are personal property consisting of ownership interests in a United States entity organized in Delaware and an undrawn retainer in the United States. *See* 11 U.S.C. §109.

6. This case was properly commenced pursuant to 11 U.S.C. §1504 by the filing of a petition for recognition of the Isle of Man Proceeding under 11 U.S.C. §1515.

7. Venue is properly located in this District pursuant to 28 U.S.C. § 1410.

8. The statutory predicates for the relief requested include sections 1504, 1507, 1515, 1517, 1520, 1521 of the Bankruptcy Code.

## STATEMENT OF FACTS

9. The Debtor is an Isle of Man company organized under the laws of the Isle of Man. Since the Debtor's liquidation in the Isle of Man (detailed below), the Debtor's registered

office has been in the Isle of Man at the office of Joint Liquidator Amy Louise Slee, which is 8 St. Georges Street, Douglas, Isle of Man, 1M1 1AH.

10. The Debtor was originally incorporated on or about October 3, 2011, in the Isle of Man. At the time of the Debtor's incorporation, the Debtor was incorporated under the name Bridge Towers Holdings No. 1 Limited. On or about November 10, 2011, the Debtor filed a notice of name change from Bridge Towers Holdings No. 1 Limited to Cooch 1106 Limited. Then, on or about April 16, 2013, Cooch 1106 Limited filed a notice of name change to the current name of the Debtor: Legion N.A. Investments, Ltd.

11. During this time, the Debtor's registered office was located in the Isle of Man at Bridge House, Bridge Street, Castletown, Isle of Man, IM9 1AX. The directors of the Debtor were originally Simon McNally ("**McNally**") and Sarah McKee ("**McKee**"), both located in the Isle of Man.

12. The Debtor is a company that is part of a larger group of companies called the "Arena Group," which also includes, among others, Sulby Alternatives Limited ("**Sulby**"), Square Mile Services, Limited, Misprint Limited, Land Consultants Limited ("**Land Consultants**"), and Local Protectors Limited – companies that are also in liquidation in the IOM.

*Investment in Atlantic Investors LLC*

13. In 2002, Atlantic Investors LLC ("**Atlantic**"), a Delaware limited liability company, was formed pursuant to an Operating Agreement dated September 10, 2002 (the "**Atlantic OA**"). Atlantic's membership upon its formation was as follows: Madison Technology LLC, a Delaware limited liability company ("**Madison**") owned 15% and the Debtor's related-entity, Unicorn Worldwide Holdings Limited ("**Unicorn**"), owned 85%. Arthur

4

Becker ("**Becker**") was and remains the principal of Madison, and upon information and belief, resides in New York.

14. Atlantic was co-managed by Madison and Unicorn (Article 4.01), although pursuant to Article 4.03 of the Atlantic OA, Unicorn had the "sole decision-making power regarding investments of the Company."

15. Pursuant to an Amendment to the Atlantic OA ("**Atlantic Amendment**") dated August 22, 2012, the Debtor was admitted a member of Atlantic, thereby replacing Unicorn and the membership interests were reallocated: 50% to the Debtor and 50% to Madison.[2] The Atlantic Amendment states that "(i) Unicorn is withdrawing as a Member … and shall no longer serve as a Managing Member of the Company, (ii) [Legion] is admitted to the Company as a substitute member …, and together with [Madison, Legion] shall serve as Managing members of the Company." Atlantic Amendment, Art. III. Thus, as of August 22, 2012, the membership of Atlantic was follows: Madison 50% and the Debtor 50%.

16. The Atlantic Amendment further provided that "to the extent not expressly amended hereby, the Operating Agreement of [Atlantic] remains in full force and effect." *Id.* at Recitals. Therefore, Atlantic was then co-managed by Madison and the Debtor, although the Debtor (in place of Unicorn) still had "sole decision-making power regarding investments of the Company." Atlantic OA, Art. 4.03.

*Atlantic's Investment in Sullivan Member LLC*

17. The Atlantic Amendment also sets forth terms for an investment by Atlantic in "certain property located on Sullivan Street in New York City, an investment outlined on the Sullivan Street Term Sheet attached [thereto]." The Term Sheet and Atlantic Amendment

---

[2] The Joint Liquidators understand that prior to the Debtor filing its name change from Cooch 1106 Ltd. to Legion on April 16, 2013 (*supra* ¶ 10), the Debtor operated under the name Legion.

5

provide that the Debtor's related-entity, Sulby, would provide a $15 million loan to Atlantic in order to fund Atlantic's investment in Sullivan Street. *See* Atlantic Amendment.

18. Atlantic received the $15 million[3] and then used those funds to purchase a 25% membership interest in Sullivan Member LLC ("**Sullivan LLC**"), a Delaware limited liability company, thereby becoming a party to Sullivan's existing operating agreement, dated August 24, 2012, which was subsequently amended and restated in 2013 and in 2014 (as amended, the "**Sullivan OA**"). Sullivan LLC was developing (or now has possibly completed development on) a luxury residential real estate project located at 10 Sullivan Street, New York, New York, including the development of certain "Townhomes" and "Tower Units" (the "**Sullivan Street Project**").

19. Pursuant to the Sullivan OA, Sullivan LLC's membership was as follows: Atlantic owns 25% and a separate entity, PMG-Madison Sullivan Development LLC ("**PMG-Madison**") owns 75%. PMG-Madison was the Managing Member. The Sullivan OA shows that both entities made a capital contribution of $15,000,000.

20. The Sullivan OA defines Atlantic as the "Investor Member" and further provides that Atlantic must be paid in full before any other distributions, which includes the return of Atlantic's aggregate capital contribution ($15 million) and its preferred return, which is an amount equal to 15% per annum on Atlantic's capital contribution. The Sullivan OA also provides that among other things, under certain circumstances, Atlantic may be given certain "Qualifying Townhomes" or "Qualifying Tower Units" in lieu of cash distributions, and further that there may be a "special distribution" to Atlantic should Sullivan LLC receive a variance from the New York City Board of Standards and Appeals prior to 2014.

---

[3] Upon information and belief, the $15 million was actually provided by another Arena Group company, Land Consultants, rather than Sulby.

20. Following Atlantic's investment, Legion understood Atlantic was working on the Sullivan Street Project with Sullivan LLC, but Legion did not receive any distributions with respect to the project, nor did it receive transparency into the project's status.

***Legion Files for Liquidation in Isle of Man***

21. After several years without any return on Legion's investment in Atlantic, Legion's financial situation became dire. It was unable to pay its creditors.

22. In and around 2014, Gail Cochrane (the then-beneficial owner of the Arena Group) replaced McKee as director of the Debtor and along with McNally, tried to manage Legion's affairs, as well as the affairs of the other related Arena Group companies.

23. However, by April 2, 2015, it was clear that the Debtor's financial condition was beyond repair. Therefore, the sole shareholder at the time, SMA Investment Holdings Limited ("**SMA**"), passed a resolution commencing a creditors' voluntary liquidation of the Debtor in accordance with Isle of Man liquidation law (the "**Liquidation Resolution**"). A copy of the resolution is attached hereto as Exhibit D.

24. The Liquidation Resolution stated, in pertinent part, that "the Company cannot by reason of its liabilities continue trading and that it be wound up voluntarily and that Amy Louise Slee, Carl Jackson and Simon Bonney be appointed Joint Liquidators for the purpose of such winding up." *Id.* The voluntary liquidation was also confirmed at a meeting of the Debtor's creditors held on or about April 2, 2015 in the Isle of Man. *Id.* Pursuant to the Act"[4] the Liquidation Resolution was filed with the Companies Registry on or about April 7, 2015. *Id.*

25. On the same date, the Joint Liquidators were officially appointed as joint liquidators and accepted their appointment pursuant to the Act, and filed their appointment with

---

[4] *See* the Act located at, http://www.legislation.gov.im/cms/images/LEGISLATION/PRINCIPAL/1931/1931-0002/CompaniesAct1931_3.pdf

the Companies Registry. A copy of such appointment has been filed with the official form of chapter 15 petition and is attached hereto as Exhibit E.

26. Over the next several years through the present, the Joint Liquidators have, and continue to, conduct the liquidation of the Debtor from the Isle of Man, where Ms. Slee is located, and the U.K., where Mr. Jackson and Mr. Bonney are located. The Joint Liquidators' investigation has included various activities in the Isle of Man, including but not limited to, meeting in person with McNally and other relevant parties in the Isle of Man. The Joint Liquidators also transferred the Debtor's registered office from its original address at Bridge House, Bridge Street, Castletown, Isle of Man, to Ms. Slee's office address in the Isle of Man at 8 St. George's Street, Douglas, Isle of Man IM1 1AH. Ms. Slee has filed all required documentation in accordance with the Act and the Rules with the Companies Registry.

27. Pursuant to the Act, the Joint Liquidators took control of the Debtor from the previous directors, and the directors lost all powers. The Joint Liquidators now have exclusive authority and act as the sole representatives of the Debtor. In that capacity, the Joint Liquidators are in charge of all of the Debtor's assets and business, including but not limited to any bank accounts (if any) or property of the Debtor. Although the assets remain in the Debtor's name, the Joint Liquidators have sole authority to make decisions concerning such assets. Creditors are required to file their claims with the Joint Liquidators, who are charged with collecting and liquidating the assets, and resolving and paying all claims of creditors pursuant to the rules of Isle of Man law. *See e.g., id.* §§ 227, 229.

28. Pursuant to these powers, the Joint Liquidators also have extensive authority to question under oath any party who may have relevant knowledge concerning the Debtor's

business, particularly former directors, officers, employees, and obtain any and all documents and information necessary to effectuate the liquidation and investigation. *See e.g.,* at § 236.

29. Using these powers, the Joint Liquidators' investigation of the financial affairs of Legion discovered that the Debtor did not have any employees or have a bank account in its name. Rather, the Debtor's sole asset was its 50% investment in Atlantic, which in turn has a 25% interest in Sullivan LLC.

30. The Joint Liquidators, on behalf of the Debtor, have not received any distribution from Atlantic, nor have they received full disclosure regarding the Sullivan Street Project and its financial status. As a result, the Joint Liquidators are unable to complete an assessment of the value of the Debtor's share of Atlantic's profits, which is necessary to properly realize the Debtor's assets, pay creditors and wind-up the Debtor.

31. In addition, through their investigation to date, the Joint Liquidators also discovered that, despite Madison's and the Debtor's co-management of Atlantic, Madison has failed to include the Joint Liquidators in decisions with respect to actions taken in the United States on behalf of Atlantic. For example, Madison executed various documents on behalf of Atlantic, including but not limited to a 2016 amendment to the Sullivan OA, that the Joint Liquidators did not approve. Further, upon information and belief, Madison, purportedly on behalf of Atlantic, also took certain actions with regard to the transfer and sale of the "Qualifying Townhomes" and "Tower Units" to entities related to Madison, to which the Joint Liquidators were not aware. The Joint Liquidators are investigating Madison's and Becker's actions relating to Atlantic in order to ascertain whether the Debtor has any claims arising from such actions.

3470136.8

32. In addition, upon information and belief, the Joint Liquidators understand that Atlantic received an additional $4,000,000 payment in connection with the Sullivan Street Project. Yet, the Joint Liquidators are unaware of the facts related to this purported payment.

33. In light of the lack of transparency regarding the Debtor's investment in Atlantic and the status of the Sullivan Street Project, as well as the actions taken by Madison without the Joint Liquidators' consent, the Joint Liquidators seek recognition of the Debtor to investigate these matters fully and pursue any assets or claims that may arise out of such investigation.

## RELIEF REQUESTED

34. The Joint Liquidators seek entry of an order of this Court granting the following relief:

- Recognition of the Joint Liquidators as "foreign representatives" within the meaning of section 101(24) of the Bankruptcy Code;

- Recognition of the Isle of Man Proceeding as a "foreign main proceeding" within the meaning of section 1502(4) of the Bankruptcy Code, and alternatively, as a "foreign nonmain proceeding";

- All relief afforded to a foreign main proceeding automatically upon recognition pursuant to section 1520 of the Bankruptcy Code;

- All relief pursuant to section 1521 of the Bankruptcy Code including but not limited to "providing for the examination of witnesses, the taking of evidence or the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities;" and

- Such other and further relief as may be necessary or appropriate.

35. The Joint Liquidators are not seeking any provisional relief prior to a hearing on recognition of the Isle of Man Proceeding.

3470136.8

**BASIS FOR RELIEF REQUESTED**

36. Chapter 15 of the Bankruptcy Code states that, unless manifestly contrary to the public policy of the United States, a court *shall* enter an order recognizing a foreign proceeding if:

(1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign non-main proceeding within the meaning of section 1502;

(2) the foreign representative applying for recognition is a person or body; and

(3) the petition meets the requirements of section 1515.

11 U.S.C. §1517(a).

37. As set forth herein, the Joint Liquidators satisfy the requirements for relief under section 1517 of the Bankruptcy Code, and thus this Court should grant recognition of the Isle of Man Proceeding.

### A. The Isle of Man Proceeding is a Foreign Main Proceeding

#### a. *The Isle of Man Proceeding is a Foreign Proceeding*

38. The Isle of Man Proceeding is a "foreign proceeding" pursuant to the Bankruptcy Code. The Bankruptcy Code defines a "foreign proceeding" as "a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation." 11 U.S.C. §101(23). Federal courts regularly hold that voluntary liquidation proceedings qualify as a "proceeding" even where there is no petition filed with a court. *In re Betcorp Ltd.*, 400 B.R. 266 (Bankr. D. Nev. 2009) (holding that an Australian voluntary winding up qualified as a "proceeding," though no petition or application was filed by liquidators with any Australian court).

39. Here, the Isle of Man Proceeding exists pursuant to the Act and the Rules of 1934, which are a statutory means of comprehensively winding down the Debtor. The Isle of Man Proceeding is a voluntary winding-up, yet the Joint Liquidators are treated as officers of the Court and governed by the Isle of Man administrative rules and regulations with regard to liquidations under the Act and the Rules. To that end, the Joint Liquidators have the ability to make an application to the Isle of Man High Court for intervention if necessary, as does any interested party to the liquidation. The Act, § 240. Voluntary liquidators, such as the Joint Liquidators, can also be removed by the Isle of Man Court (§ 237) and/or fined for failure to comply with reporting guidelines (§ 267). In addition, pursuant to s.236(1)(a) of the Act, the Joint Liquidators must obtain approval from the Isle of Man High Court to enter into any settlements relating to the Debtor's assets.

40. In addition, the Isle of Man Proceeding is "collective" in nature, as upon winding up, the Debtor's property shall be "applied in satisfaction of its liabilities para passu, and subject to such application, shall, unless the articles provide otherwise, be distributed among the members according to their rights and interests in the company." *Id*. § 235; *see also* § 248 ("in winding up an insolvent company the same rules shall prevail and be overserved with regard to the respective rights of secured and unsecured creditors and to debts provable…."). The Joint Liquidators have the authority to pay "any classes of creditors in full" and compromise with creditors to the extent necessary to resolve outstanding liabilities, debts, and/or claims and give complete discharge in respect thereof. *Id.* §§ 185, 235.

41. The Isle of Man Proceeding is a "foreign proceeding" as it constitutes a collective judicial proceeding under the laws of the Isle of Man, which laws relate to insolvency, in which

assets of the Debtor are subject ultimately to controls of the Isle of Man Court for the purpose of liquidating such assets.

### b.    *The Isle of Man Proceeding is a Foreign Main Proceeding*

42.    Not only is the Isle of Man Proceeding a foreign proceeding, it is also a foreign main proceeding within the meaning of section 1502(4) of the Bankruptcy Code. A "foreign main proceeding" means "a foreign proceeding pending in a country where the debtor has the center of its main interests." 11 U.S.C. §1502(4). "The relevant time period for determining COMI should be based on the Debtor's activities at or around the time [this] Chapter 15 Petition is filed…but a court may consider the period between the commencement of the foreign insolvency proceeding and the filing of the Chapter 15 petition to ensure that a debtor has not manipulated its COMI in bad faith." *In re Fairfield Sentry Ltd.*, 714 F.3d 127, 137 (2d Cir. 2013).

43.    While the Bankruptcy Code does not define "center of main interests," ("**COMI**") it does provide that, in the absence of evidence to the contrary, the debtor's registered office is presumed to be the debtor's COMI. 11 U.S.C. § 1516(c). To overcome this presumption, courts have identified "[v]arious factors, singly or combined, [that] could be relevant to such a determination" including: (a) the location of the debtor's headquarters; (b) the location of those who actually manage the debtor; (c) the location of the debtor's primary assets; (d) the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and (e) the jurisdiction whose laws would apply to most disputes. *In re SPhinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006), *aff'd*, 371 B.R. 10 (S.D.N.Y. 2007). *See also In re Suntech Power Holdings Co., Ltd.*, 520 B.R. 399 (Bankr. S.D.N.Y. 2014) (recognizing a Chinese holding company COMI as the Cayman Islands, despite no activity there prior to

13

liquidation); *In re Ascot Fund Ltd.*, 603 B.R. 271 (Bankr. S.D.N.Y. 2019) (recognizing an Cayman investment fund COMI as Cayman Islands where only property in U.S.)

44. Here, the Isle of Man was and is the center of the Debtor's main interests. The Debtor's registered office is in the Isle of Man at 8 St. Georges Street, Douglas, Isle of Man, 1M1 1AH, and thus the Isle of Man is presumed to be the Debtor's COMI. Moreover, the other factors considered by courts also support that the Isle of Man is the COMI for the Debtor. In addition to activities in the U.K., the Joint Liquidators have been operating the liquidation activities in the Isle of Man, which has included but is not limited to, meeting with McNally in the Isle of Man, searching for assets and bank accounts in the Isle of Man, and investigating and closing up the Debtor's accounts and records with the previous management company, Odyssey Partners Limited (and Isle of Man Company) ("Odyssey") that were located in the Isle of Man. The Joint Liquidators have also hired lawyers in the Isle of Man (Appleby LLC) to assist the with the liquidation, published notices in the Isle of Man as required, directed interested parties to contact Ms. Slee's office and/or Appleby LLC, and have communicated with the Isle of Man Companies Registry and filed any necessary paperwork required under Isle of Man liquidation laws.

45. Also, the Joint Liquidators cannot do certain liquidation activities without the sanction of the Isle of Man High Court. By way of example, pursuant to the Joint Liquidators' obligations under the Act, they sought (and received) approval from the Isle of Man High Court to enter into a settlement relating to potential claims against the Debtor. Currently, there is a proceeding in London, England related to various entities within the Arena Group. The Debtor is not a party to these proceedings, nor do the proceedings concern the Debtor's assets. As part of these proceedings, however, various parties have plead claims against the Arena Group

companies that are subject to the London proceedings and certain parties have intimated potential claims against the Debtor's assets (although no such claims have been plead to date). In September 2019, the Joint Liquidators entered into a settlement agreement with certain parties, which included any potential and unasserted claims against the Debtor's assets. Given that the settlement also related to potential claims against the Debtor's assets, on March 6, 2020, the Joint Liquidators applied to the Isle of Man High Court for its sanction (or approval) to enter into the settlement agreement. The application was widely advertised in two Isle of Man newspapers (in addition to other publications across the globe) and interested parties were permitted to intervene. In July 2020, the court held a hearing in the Isle of Man on the application, which was attended by the Joint Liquidators' attorneys, and subsequently, the Isle of Man court approved the sanction request.

46.    Lastly, even before the liquidation, the Debtor had substantial ties to the Isle of Man, including that the Debtor (i) was organized under the laws of the Isle of Man; (ii) was regulated by the Isle of Man regulators; (iii) was subject to audit in Isle of Man; (iv) during certain times, the directors held meetings in the Isle of Man and managed the business from the Isle of Man, and (v) was managed, in part, by McNally, its director and nominated officer, in the Isle of Man and McNally's company, Odyssey, which maintained accounts and statutory records in the Isle of Man.

47.    Based on the foregoing, the Isle of Man is the "center of main interests" for the Debtor, and thus the Isle of Man Proceeding is a foreign main proceeding.

    **B.    <u>Alternatively, the Isle of Man Proceeding is a Foreign Non-Main Proceeding</u>**

48.    In the event the Court determines that the Isle of Man Proceeding is not a foreign main proceeding, in the alternative, the Joint Liquidators request the Court to recognize the Isle

of Man Proceeding as a foreign nonmain proceeding, as defined in section 1502(5) of the Bankruptcy Code, because, at minimum, the Debtor has an establishment in the Isle of Man. And "establishment" is defined in section 1502(2) of the Bankruptcy Code as "any place of operations where the debtor carries out a nontransitory economic activity." *In re SPhinX, Ltd.*, 351 B.R. 103, 122 (Bankr. S.D.N.Y 2006), *aff'd*, 371 B.R. 10 (S.D.N.Y. 2007) (recognizing nonmain proceeding where contacts with Cayman Islands insufficient to establish main proceeding); *In re Servicos de Petroleo Constellation S.A.*, 600 B.R. 237, 281-282 (Bankr. S.D.N.Y. 2019) (finding a Luxembourg holding company's minimal ties to Brazil sufficient to establish non-main proceeding recognition). As discussed above, prior to liquidation, the Debtor was headquartered in the Isle of Man and since the liquidation, the Joint Liquidators have conducted the Debtor's business from the Isle of Man as well as the U.K., which at a minimum, have created an establishment in the Isle of Man.

    C.    **The Joint Liquidators are "Foreign Representatives"**

49.    The Joint Liquidators are persons who are the authorized foreign representatives of the Isle of Man Proceeding within the meaning of section 101(24) of the Bankruptcy Code. The Bankruptcy Code defines a "foreign representative" as "a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding." 11 U.S.C. §101(24).

50.    Pursuant to section 236 of the Act, the Joint Liquidators are authorized to administer the Debtor's assets in accordance with the insolvency laws of the Isle of Man and to act as representatives of the Isle of Man Proceeding. Further, pursuant to the Act, Section 229, on the appointment of the Joint Liquidators, "all the powers of the directors [of the Debtor] shall

cease ….." Therefore, as of April 2, 2015, the Joint Liquidators were appointed to "wind[] up the affairs and distribute[] the assets of [the Debtor]." *Id.*, § 227.

### D. The Chapter 15 Case Was Properly Commenced

51. Section 1515 of the Bankruptcy Code sets forth the process by which a foreign representative applies for recognition. It provides, in relevant part, that:

(a) A foreign representative applies to the court for recognition of a foreign proceeding in which the foreign representative has been appointed by filing a petition for recognition.

(b) A petition for recognition shall be accompanied by –

(1) A certified copy of the decision commencing such foreign proceeding and appointing the foreign representative…

(c) A petition for recognition shall also be accompanied by a statement identifying foreign proceedings with respect to the debtor that are known to the foreign representative.

11 U.S.C. § 1515.

52. As set forth above, the Joint Liquidators meet the requirements of section 1515 of the Bankruptcy Code. The Joint Liquidators have commenced this Chapter 15 case by filing a petition with this Court, and have submitted a certified copy of the resolution commencing the voluntary liquidation of the Debtor and appointing the Joint Liquidators.

53. In addition, the Joint Liquidators have submitted to the Court a statement identifying all foreign proceedings with respect to the Debtor that are known to the Joint Liquidators, as required by Section 1515(c) of the Bankruptcy Code, which are none. Thus, the Joint Liquidators have satisfied all of the statutory requirements of section 1517 of the Bankruptcy Code to obtain recognition of the Isle of Man Proceeding.

3470136.8

E.  **The Debtor Satisfies 11 U.S.C. § 109**

54.   In *Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet)*, 737 F.3d 238 (2d Cir. 2013), the United States Court of Appeals for the Second Circuit held that a foreign entity seeking recognition under Chapter 15 of the Bankruptcy Code must satisfy the requirements of section 109(a) of the Bankruptcy Code (*i.e.*, the foreign debtor must have "property" in the United States) in addition to satisfying the requirements for recognition set forth in section 1517 of the Bankruptcy Code.

55.   Subsequent to the Second Circuit's decision, this Court has held that a foreign debtor has "property" in the United States when the foreign debtor owns a membership interest in a company organized in the United States, or (2) the foreign debtor has transferred funds to counsel in the United States as a retainer.  *In re Globo Comunicacoes e Participacoes S.A.,* 317 B.R. 235, 249 (S.D.N.Y. 2004) (holding "property" consisted of a wholly owned Delaware corporation and an old bank account in the U.S.); *In re Octaviar Admin. Pty. Ltd.*, 511 B.R. 361, 373 (Bankr. S.D.N.Y. 2014) (debtor only had an undrawn $10,000 retainer with foreign representatives U.S. counsel in a U.S. bank).  *See also In re Berau Capital Res. Pte Ltd*, 540 B.R. 80 (S.D.N.Y. 2015) (attorney retainer and debt indenture with New York choice of law and forum selection both were "property" to satisfy §109(a)).

56.   The Debtor has a membership interest in Atlantic, a Delaware limited liability company and a retainer with U.S. counsel.  Thus, section 109(a) of the Bankruptcy Code is not a bar to recognition of the Isle of Man Proceeding under chapter 15.

## THE NEED FOR DISCOVERY

57.   As set forth above, the Joint Liquidators have faced a lack of cooperation in obtaining the information and documents to which they are entitled, and which they require and

have requested, to evaluate the Debtor's assets. Such lack of cooperation and other information presently known to the Joint Liquidators indicates that other claims may exist relating to the Debtor's investment in Atlantic. Petitioners have thus commenced this chapter 15 case in order to permit them (i) to advance their investigation as part of the process of marshaling the assets of the Debtor, including the potential recovery of the Debtor's assets in the United States; and (ii) to advance potential prosecution of actions against parties who are in the United States.

58. For that reason, immediately following recognition, the Joint Liquidators plan to seek discovery to conduct their investigation. If the Debtor is recognized as a foreign main proceeding, the Joint Liquidators will exercise the rights automatically granted to a Debtor in a foreign main proceeding to conduct such discovery. If, however, the Debtor is recognized a foreign nonmain proceeding, the Joint Liquidators still need and seek to conduct such investigation. Thus, should the Court recognize the Debtor as a foreign nonmain proceeding, the Joint Liquidators seek relief under section 1502(5) of the Bankruptcy Code to obtain discovery from any parties in the United States with relevant information for the Joint Liquidators to assess the value of the Debtor's assets and the existence of potential claims of the Debtor.

## NOTICE

59. The Joint Liquidators have provided notice of this Verified Petition, pursuant to Bankruptcy Rules 1011(b) and 2002(q), to: (a) the Office of the United States Trustee for the Southern District of New York; (b) all parties to litigations currently pending in the United States to which the Debtors are a party, if any; (c) the debtor pursuant to Bankruptcy Rule 2002(q); and (d) all persons or bodies authorized to administer foreign proceedings of the debtor pursuant to Bankruptcy Rule 2002(q). The Joint Liquidators believe that the foregoing notice is reasonable and proper under the circumstances and complies with Bankruptcy Rules 1011(b) and 2002(q).

In light of the nature of the relief requested, the Joint Liquidators respectfully submit that no further notice is necessary.

## CONCLUSION

WHEREFORE, the Joint Liquidators respectfully requests that this Court grant the relief requested herein, including recognizing the Isle of Man Proceeding as a "foreign main proceeding" under section 1517 of the Bankruptcy Code or in the alternative, a "foreign nonmain proceeding," pursuant to the proposed order annexed hereto as Exhibit A, and grant such other relief as is just.

Dated: August 21, 2020
      New York, New York

      GOLENBOCK EISEMAN ASSOR BELL
       & PESKOE LLP
      711 Third Avenue
      New York, New York 10017
      (212) 907-7300 – office
      (212) 754-0777 – facsimile

By: /s/ Elizabeth C. Conway
      Jonathan L. Flaxer, Esq.
      Elizabeth C. Conway, Esq.
      Michael S. Weinstein, Esq.

*Counsel for the Joint Liquidators*

3470136.8